Case number 25-5440, USA v. Joshua Starling. Argument not to exceed 15 minutes per side. Ms. Green, you may proceed for the appellate. Good morning. Good morning. May it please the Court. My name is Molly Rose Green and I represent the appellant Joshua Starling. I would like to reserve three minutes of my time for rebuttal. Tennessee law regulates more cocaine isomers than federal law. Because Mr. Starling's two drug convictions could have been for an isomer of cocaine not federally regulated, those two drug convictions are overbroad and are not serious drug offenses under the categorical approach for purposes of the ACCA amendment. Seven of the eight circuit court decisions examining similar or identical statutory language have agreed. What do we do with the Shepard documents? We don't look at Shepard documents in this case. And that's because the relevant portion of the statute is not divisible. I want to go there because I think that's your main point. If we can look at the Shepard documents, just out of curiosity, that does show it's just cocaine? Well, that shows it's cocaine, but cocaine could include any isomer of cocaine. It could have been for a positional isomer of cocaine, the isomer that is not federally regulated. And that's because Tennessee prosecutors don't have to distinguish or specify the particular chemical or atomic composition of a substance in order to get a conviction for a cocaine offense. Did they ever mention isomers, though, in their indictments? I have not seen that, and they certainly didn't hear. Well, right, that's what hurts. The question is what it means. Yeah, so, I mean, there's absolutely no case law showing that in the state of Tennessee, showing that I would say that the specific controlled substance, but more relevant here, the chemical composition of cocaine is an element that prosecutors have to prove. I'll let you go with your divisibility argument. But it's only one type of isomer, right? That's broader? That's correct. Okay. Yeah, the other two broad categories of isomers are federally regulated. Yes? My understanding is that that's kind of a lab isomer, like nobody's ever seen it on the street. Is there any example of this isomer cocaine ever being sold or used or available? I guess this gets into the realistic probability. Yeah. My understanding is that it's just not something that anybody's ever seen.  And I do want to address that direct question, but I would say that I do not think we have any responsibility to show a realistic probability in this case. And I can get more into that if you'd prefer. In terms of positional isomers, I believe that it is enough that we know that they do exist. And many controlled substances are manufactured in laboratories. But is there any evidence in the record about this, that these positional isomers exist outside of a lab, that they can be snorted or smoked or whatever it is? So we don't have any expert testimony in this case, in the record, discussing that particular question. We've cited cases that get into kind of what positional isomers are. But no, there's nothing particular in the record. No expert witness testimony, something like that. I'll return to the divisibility, just since you brought it up. I think you brought it up. Okay. No, this is your argument. I believed you brought it up, and I was wrong. Well, then, I guess I'll talk a little bit about it. That's very clever argumentation. I want to refer to Judge Sutton's point about it not being divisible. That's good argumentation. I give you an A for that one. Thank you. That'll be my only A of the day, but I will take it. So we would say that you do not look at the Shepard documents here, because the relevant portion of the statute is not divisible. And this court has only held the preceding subsections divisible. So the only thing that we can look at here is the judges. But why would we do this differently? Doesn't that seem strange? So subsections A1 through A4 are alternate ways of violating the statute, whereas subsection C1 and the following subsections are punishment and classification subsections. And the government did not argue that those subsections were divisible. They merely cited to Goldston, which holds only that A1 through A4 are divisible. So there's no argument, even, that C1 is divisible. And there's also nothing in the record to show that the controlled substance is an element. There's no case. So C1 isn't divisible, essentially. Perhaps a different controlled substance could be a different way of violating a single element, but it is not a different means of violating the statute. Is C1 divisible from C2? No. Or at least the government hasn't argued that or presented anything about it. I would argue no. They're not different offenses. I mean, it's different substances, different amounts, different class of felony. How is that not divisible? Sure. I mean, we don't have anything showing that the substance itself is an element, but I agree with you that the amount of drug is different. Isn't that a pretty classic element? That is an element. That's correct. So I'll address another argument that the government brought up, which was that the language we've pointed to as the definition of cocaine in Tennessee could not be a definition because it has the words including cocaine in it. And to that point, I would highlight several circuit court decisions that have examined the same or even identical language and found it to be that state's definition of cocaine, meaning that a conviction that is charged, prosecuted, and punished as a cocaine conviction could indeed have been for something not federally regulated, such as a positional isomer here. And I also think it's helpful to pull back a little bit and think of this word definition. We're kind of in the world of terms of art, of criminal law. Definition is a shorthand, essentially. What we're really looking at is what is criminalized in the state versus what is criminalized federally, the scope of substances that are criminalized. So the question really is what does a prosecutor have to show to get a cocaine conviction in Tennessee? Not so much this myopic focus on the word definition. We're really looking at scope. So there's some helpful language in a few of the cases that look at this on this point specifically. So Ferguson pointed to the state law and said, this is a provision that criminalizes a substance that is not in the CSA. Similar here. Minter as well, talking about criminalized conduct that is not federally criminalized. So ensuring that we're comparing the scope of these two statutes. Did you want to address your constructive amendment arguments and so forth? No. I'll rest on the briefs for that argument. All right. Well, you can have your full rebuttal. And if he provokes you, you'll have three extra minutes. Thank you very much. All right. Thank you. Hear from the government. Good morning. Good morning, Your Honor. May it please the court. I'm Robert McGuire. I represent the United States. Your Honor, Joshua Starling was a five-time convicted felon who was already on parole when he was arrested with a gun in his waistband by police officers serving attempted murder warrants on him for shooting into a birthday party at a Nashville apartment complex. He has convictions, they all agree, for aggravated burglary, delivery of cocaine, and sale of cocaine. But despite those facts, we must now discuss how many isomers dance on the head of a Tennessee criminal pen and whether that is more or the same amount of isomers that dance on the head of the federal criminal pen. Your Honors, Mr. Starling was convicted of these offenses, and the statutory scheme of Tennessee is coterminous or coextensive with the federal scheme, and that is by way of design. The isomer defense in the 1980s prompted Congress to amend the CSA in 1984. And in the Myers case, Judge Loken dissented and pointed out that it was important that the addition in 1984 was just to add the word isomers. It was only later that Congress broke out optical and geometric isomers. Can I ask you a question about 417C1? So under your reading, the cocaine that's mentioned in C1 is just cocaine, no isomers, right? That's correct, Your Honor. The isomers are covered in C2A. That's correct, Your Honor. It seems odd to me because you could have a pound of isomers or whatever and it would still be a Class C felony, not a Class B felony. That's true, Your Honor. Is that a question we should ask the Tennessee Supreme Court? Your Honor, the court could do that. I would submit, Your Honor, in this case the court doesn't have to do that, primarily because in Tennessee cocaine is only really prosecuted in the plain public meaning of the word cocaine. So there's really no danger that someone is going to have, as the defense cited, a kilogram of isomer cocaine and be punished as a C felon. Nobody's ever raised it as a defense. I assume if somebody had that defense they would raise it and say, oh wait, this isn't cocaine, it's an isomer, so even though I have a pound of it, it's a Class C felony. Your Honor, I was a misspent youth. I was a state prosecutor in Nashville for 13 years. I thought you were going to say you were a cocaine user. No, sir. That would have been a different level of misspent youth. But I was down in the pits and snares of state court, which did feel misspent at the time, and I was a defense attorney for four years. I can tell the court that this defense has never been raised in my experience. There's no case law that raises it. It's just something that exists only in the mind of federal criminal defense attorneys attempting to overturn ACCA provisions. So you're saying state indictments would just mention cocaine and just mean cocaine? That's correct, Your Honor, and that's what they did in this instance, and that's what they have done historically in Tennessee. And cocaine, the plain public meaning of cocaine is what the defendant was convicted of. In this case it happened to be crack cocaine, but the point remains the same. What's your response to her, it's not a divisible crime? It has to be divisible. It has to be divisible, not only under Goldston, but this court, but Apprendi and this court's prior findings in Banks in 2018 and Baines v. Garland in 2024. The substances are different. The amounts change to punishment. It would be something that a prosecutor would have to prove is what substance did the defendant possess that's illegal and how much of it did he or she possess to index to the punishment. If the government or the prosecution failed to do either of those things, the defendant would be acquitted on those charges, either as to the amount and it would just regress to the least amount or to the substance. If the government couldn't prove the substance, then the defendant would be acquitted. So, Your Honor, I know that that didn't necessarily come up in the briefing, but, frankly, I think that it's hard to argue that it's not divisible, just based on the way we understand statutory construction to work and the case law that this court has already determined. I would submit that Tennessee's statutory scheme is similar to the statutory scheme in Arkansas under Buckley. My colleague, Ms. Green, cited Wright and Ferguson, which are other Eighth Circuit cases, but they examined an older statute. The current Arkansas statute is what Buckley describes, and Buckley categorizes cocaine under the sort of original public meaning of cocaine and describes the Arkansas drug schedule as a list, which is exactly the way Tennessee describes it. Tennessee describes their drug schedule and uses the word list or lists multiple times. It is not an attempt to define cocaine, as it is an attempt to list what is potentially criminalized by Tennessee's statutory scheme. Your Honor, and this is something, I know there's some danger in this, given the exchange you had with my colleague, but I do think that the court did reference the idea of positional isomers not existing outside of a lab. The court's correct, and I think the defense has conceded, that there really was no evidence in the record about positional isomers in this record. Mr. McGuire, whose burden is it to prove whether or not there's a realistic possibility that Tennessee would prosecute crimes on positional isomers? Your counsel for the defense says that it's your burden. Is it your burden or is it her burden? So, Your Honor, under Cervernak, if the statute is plain, then it's sort of nobody's burden because we don't get to it. But if it is not plain, then, Your Honor, I think it would be the defense's burden to establish that there's a realistic possibility that this offense would be prosecuted by Tennessee prosecutors, which they're not going to be able to do. Now, I would submit, Your Honor, the statute is either plain in the sense of Tennessee cocaine is the original public meaning of cocaine. It is the way that the district court described it as cocaine. If it's not plain, then the defense, then Mr. Starling, has failed to establish there's a realistic possibility that anyone gets prosecuted for positional isomers of cocaine because they only really exist within a lab setting. There's no positional isomer dealer in the streets of the Middle District of Tennessee who is out there selling positional isomers of cocaine. The investigators haven't found them yet. Who knows? I suppose that's true, Your Honor, but at the end of the day, there really isn't any evidence that is anywhere in any of the cases, the courts that have considered this, that establish that positional isomers exist outside of a laboratory setting. So it would have to be a very rare drug dealer indeed to be able to do that. Your Honor, I, like many lawyers, went to law school because I wanted to avoid science, but I would submit that most individuals involved in criminality have a similar bent. It would be difficult for them to achieve a positional isomer to be able to then distribute it. You watched Breaking Bad? I have watched Breaking Bad, Your Honor, and I do think that if this was a situation where a high school chemistry professor suddenly became a drug dealer, even then I think it would be, from what I understand the science to be, extraordinarily difficult to create a positional isomer in a lab, much less the trailers that I think were used in Breaking Bad. But to the point, Your Honor, the defense is not able to show that it actually exists in nature. Your Honor, I would note finally that in this court, in Wilkes, the court considered a Michigan statute which criminalized stereoisomers. And the Michigan statute criminalized stereoisomers because that was the way isomers were understood at the time Michigan passed their statute. In Wilkes, this court considered the idea that, well, there are other geometric isomers that wouldn't be categorized as stereoisomers. I would submit, Your Honor, that's a very similar situation to what we have here. The way Tennessee criminalized isomers was the understanding that it would be coextensive or coterminous with the federal statute. The fact that a positional isomer may exist in a lab was not something Tennessee placed in their statute to try to over-criminalize positional isomers. They were trying to be coextensive with the federal statute. And because that's true, Your Honor, we do get to the categorical approach. Because we get to the categorical approach, the shepherd... I don't know whether the Tennessee prosecutors would want you narrowing their statute and hamstringing them with, hey, there's a new drug on the street. We can't criminalize it because the feds think it's exactly the same as theirs. Again, I'm not sure that the Tennessee Supreme Court would agree with that either. Your Honor, what I would submit is there's no danger that this court is going to somehow rewrite the statute in a meaningful way. In the sense of if this court was to hold that Tennessee's drug statute and the criminalization of cocaine isomers is coextensive with the federal statute, there's no real danger based on what we know about the science that somehow criminals are going to be able to go free and roam the streets and prosecutors are going to be hamstrung in their ability to prosecute cases. I would submit, Your Honor, that is a parade of horribles that the defense offers that does not exist in reality. And because that's the case, there's no real danger, I would submit, that the court is going to somehow rewrite the statute to penalize Tennessee prosecutors for trying to hold drug offenders accountable. It's just something that is an opportunity for well-meaning and well-intentioned and very intelligent criminal defense attorneys like my colleague here to try to use the categorical approach to knock back positions with the ACCA that they don't agree with. Can I ask you a question about the indictment? Yes, sir. Why is it not a structural problem under the Belcher case? Is the court talking about the Erlinger issue? Yes.  Your Honor, I would submit that it is not a structural. This court's already determined that these kinds of errors are not structural errors. Well, kind of, right? I mean, we've said that failing to submit it to the fact finder is not structural. But in Belcher, it seems to me we said that the failure to indict the elements, that's a different kind of apprendi error, that that's a structural error. And if we're going to draw that distinction between failing to send it to the fact finder versus failing to indict it, we've got a failure to indict here, right? I would respond to that question in multiple ways. First, Your Honor, of course, at the time of the indictment, at the time of the trial, this court had said that the multiple occasions fact was not an element of the offense. It was after the trial that Erlinger came out. It was post-Wooden, pre-Erlinger. But I would submit, Your Honor, two things. One is there's no scenario in which any fact finder anywhere was going to determine that these offenses did not happen on different occasions. They happened in different years and in different counties. There's also no dispute in this record that the defendant was unaware that the government was proceeding under a 924E penalty structure. So under plain error, you're saying what? It would fail prong three and four? Yes, sir, if we get to a plain error. But if it's structural, then prong three is already taken care of by Belcher, it seems to me. So we would be talking about four, and his awareness of what was going on, the fact that he was offered a trial or whatever, that would go to prong four, I take it. Is that right? Your Honor, that's correct. Basically, the defense in their trial brief before the trial acknowledged to the court that the government was proceeding under an ACCA theory. So it was well known to all the parties. And the defense had an opportunity to raise pre-trial, there's a defect in the indictment, that this needs to be alleged in the indictment. And they didn't. They, for whatever reason, decided not to do that. And it was well known to the, despite being well known to the parties. And that, Your Honor, I would submit is what makes it different than a case where the defendant is somehow then surprised later that the government is proceeding under an ACCA analysis. I would submit, Your Honor, under Cotton, which is a Supreme Court case in the early 2000s, it's a similar issue where ultimately there's no real doubt that any fact finder would have found that the defendant committed these offenses on different occasions. Cotton left, unhelpfully left open the question of whether this was a structural error, but went straight to the fourth element or however you want to characterize it. And I take it that you are suggesting that we could do the same thing here. I think that's right, Your Honor. And again, whether you consider it as plain error or just a harmless error, the result is the same. And that ultimately there's no danger that the defendant was not on notice, which is the primary function of an indictment, is to let the defendant know what he's charged with and what the punishment is. There's no danger that he didn't know what the punishment was. He reacted accordingly. It's one of the reasons he had a bench trial. There was a specific and separate fact finding based on proof in the record that the defendant's offenses were committed on different occasions. The defense at trial did not challenge that at all, despite being given the opportunity. And because that's the case, the government submits that the district court should be affirmed. All right. Thanks very much. We'll hear rebuttal. So under the government's argument, cocaine would be charged under the Section C1 and any isomer of cocaine would be under C2, which, as we've argued in our brief, revives the cocaine isomer argument. The government would have to prove the precise chemical composition of the cocaine-related substance in every case. And we submit that is not how Tennessee prosecutes or deals with cocaine-related substances or synthetic cocaine. We also submit that there is no ordinary, plain meaning of cocaine in Tennessee. There's not a single case in support of that or what that possibly might mean to put criminal defendants on notice of what that crime would compose. When you say not a single case, is that because they all just refer to cocaine or what do you mean by that? I mean that there's no case discussing... Either direction? Is that... Correct. There's no case explaining what cocaine means. Right. So to say, you know, that the language that we have in either 408 before the drug schedule or 402.17, the definition of a narcotic drug, to say none of those explain what cocaine means, even though we have that language, same language that other circuit courts have found to explain what cocaine means, what you can be punished for possessing, to push those aside and say we're relying on ordinary meaning when there's no case ever referencing in Tennessee any ordinary meaning. I'll quickly distinguish Buckley as well. There, the court noted that the statute in particular said cocaine and it did not in any way incorporate the drug schedules. Whereas here, the definition of controlled substance, referenced in 417, is incorporated. And I'll finish just by discussing the burden. The burden under the realistic probability test would be on the defense, although this statute is plain and it does not apply here. However, another really important burden is the burden to show the potential ACCA predicates are a match. And that burden is on the government. And the government has pointed to nothing to show that a Tennessee state prosecutor has to prove the chemical composition to ensure that someone is not being convicted for possessing a positional isomer, something that is not federally regulated. And the government said that this might be rare, a positional isomer. It doesn't matter if it's rare. That's the system we have with the categorical approach. It's under-inclusive by design to protect the constitutional rights of criminal defendants who are being potentially punished again for past conduct. Thank you very much. All right. Thanks to both of you for your helpful briefs and for answering our questions at Argument, which we always appreciate. Thank you so much.